UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JASON JOSEPH GUIDRY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-10033** |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | **SECTION: "R" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("The Commissioner") pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied the request of Plaintiff, Jason Joseph Guidry ("Guidry"), for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423 and for Supplemental Security Income Benefits ("SSI") pursuant to Title XVI, 42 U.S.C. § 423.[1]

**I.    Background**

Jason Guidry ("Guidry") is a forty-five-year-old, who was thirty-nine years old at the time of the alleged onset date of June 24, 2012. R. Doc. 16-6, Tr. 184. Guidry has a high school education with past relevant work as a tanker-man and process coordinator in an oil field. R. Doc. 16-6, Tr. 167.

Guidry filed for a period of disability and DIB under Title II and SSI under Title XVI on

---

[1] R. Doc. 1, p.1.

January 19, 2016, alleging disability since June 24, 2012 due to chronic migraine, cervical disc bulges with pinched nerve, psoriatic arthritis, and tremors. R. Doc. 16-6, Tr. 159. All claims were initially denied in December of 2014. R. Doc. 16-3, Tr. 55.

Guidry filed a written request for hearing on June 20, 2016. R. Doc. 16-4, Tr. 88-89. Thomas G. Henderson, the Administrative Law Judge ("ALJ"), held a hearing on September 20, 2017. R. Doc. 16-2, Tr. 28-48.  The ALJ denied Guidry's claim on November 17, 2017, finding he was not disabled under the meaning of the Social Security Act ("SSA"). R. Doc. 16-2, Tr. 10-24.

In his decision, the ALJ analyzed Guidry's claims pursuant to the five-step evaluation process used to determine whether a claimant is disabled.[2] Using this process, the ALJ found that Guidry met the insured status requirements of the SSA through June 30, 2018. R. Doc. 16-2, Tr. 15 (Finding 1). The ALJ also found that he did not engage in substantial gainful activity since June 24, 2012, his alleged onset date. *Id.* (Finding 2).  The ALJ further found that he suffered from psoriatic arthritis, psoriasis, cervical disc disease and headaches. *Id.* (Finding 3) The ALJ found that the impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part. 404, Subpart P, Appendix 1, so as to constitute a presumptive disability. R. Doc. 16-2, Tr. 16 (Finding 4).

---

[2] To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999)). First, the claimant must not be presently working at any substantial gainful activity. *Id*. Second, the claimant must have an impairment or combination of impairments that are severe. *Id.* An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. *Id.* Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work that exists in the national economy, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.; see Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

Guidry filed a complaint contending that the ALJ's decision was not based upon substantial evidence because (1) the ALJ erred in failing to consider whether plaintiff's condition met or equaled listing 14.09, (2) the ALJ's finding that Guidry's condition did not equal listing 8.05 is not supported by substantial evidence where the ALJ did not evaluate the frequency of Plaintiff's lesion flare-ups, (3) because there is new and material evidence contained in Dr. Boh's medical records warrants a remand to the ALJ, and (4) the ALJ failed to apply the correct legal standard when assessing Guidry's residual functional capacity. R. Doc. 18, p. 6.

The Commissioner contends that the ALJ properly evaluated whether Guidry met or equaled the criteria of Listing 14.09. R. Doc. 23, p. 4. The Commissioner contends that substantial evidence supports the ALJ's finding that Guidry did not meet or equal Listing 8.05. R. Doc. 23, p. 8. The Commissioner contends that the new evidence submitted to the Appeals Council had bearing on the ALJ's decision and does not warrant remand. R. Doc 23, p. 9. The ALJ, finally, contends his residual functional capacity finding is supported by substantial evidence. R. Doc. 23, p. 11.

## II.   Standard of Review

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether: (1) the final decision is supported by substantial evidence; and (2) whether the Commissioner applied the proper legal standards when evaluating the evidence. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Commissioner. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

However, an ALJ's failure to apply the correct legal test constitutes a ground for reversal. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995) (citing *Richardson v Perales*, 402 U.S. 389, 401 (1971)). It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found where there is only a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). However, a single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Franklin v. Soc. Sec. Admin.*, No. 122681, 2013 WL 5739078, at *2 (E.D. La. Oct. 22, 2013) (citing *Kent v. Schweiker,* 710 F.2d 110, 114 (3rd Cir. 1983)).

The ALJ must give controlling weight to the opinion of a treating physician if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(c)(2)). However, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The relevant criteria to consider provides that the ALJ consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion

afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See* 20 C.F.R § 404.1527. "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)).

Where there is reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, the ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under 20 CFR 404.1527. *See Newton,* 209 F.3d 448. Further, regardless of the opinions and diagnoses of medical sources, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez v. Chater*, 64 F.3d 173, 176 (5th Cir. 1995).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [his] age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000) (citing *Martinez*, 64 F.3d at 174).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques". *See* 42 U.S.C. 423(d)(3).

**III.    Analysis**

   A. **Listing Level 14.09**

Guidry alleges that the ALJ failed to conduct any analysis as to whether he met the Listing Level 14.09. R. Doc. 18, p. 8. Guidry also contends that psoriatic lesions impact his skin (organ) at the moderate level which satisfies 14.09(a)(2)B1 criteria. *Id.* Guidry points to erythema on Guidry's bilateral distal palms and nail pitting on all ten of his fingernails, as well as the dusky red and scaly skin with indurated plaques on his abdomen, back and bilateral extremities. R. Doc. 18, p. 9.

The Commissioner concedes that the ALJ did not mention Listing 14.09. R. Doc. 23, p. 5. The Commissioner contends, however, that the failure to do so was harmless as the record fully supports the conclusion that Guidry did not meet or equaled Listing 14.09. *Id.* The Commissioner further contends that there is no undisputed medical evidence in that record that shows Plaintiff met Listing 14.09. R. Doc. 23, p. 6.

Listing 14.09 applies to inflammatory arthritis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09 (effective Jan. 2, 2015 to May 17, 2015). This listing may be associated with several disorders, specifically including rheumatoid arthritis. 20 C.F.R. Pt. 404, Subpt. App. 1, § 14.00(D)(6)(c)(i). Listing 14.09 can be met in four ways, each described in paragraphs (A) through (D) of the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(A)–(D). As for the paragraph (A) criteria, a claimant meets Listing 14.09 if he has <u>persistent</u> inflammation or deformity of one or more major peripheral weight-bearing joints (i.e. wrist-hand) resulting in the inability to (1) ambulate

effectively, as defined in § 14.00(C)(6), or (2) perform fine and gross movements effectively, as defined in § 14.00(C)(7). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(A)(1)–(2). The regulations define "inability to ambulate effectively" and "inability to perform fine and gross movements effectively" by reference to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)–(c). *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 14.00(C)(6)–(7), 14.09(A)(1)–(2) (Listing 14.09 references § 14.00(C)(6)–(7), which in turn references § 1.00(B)(2)(b)–(c)).

The inability to perform fine and gross movements effectively on a sustained basis means "an extreme loss of function of both upper extremities," which "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 14.00(C)(7) (citing 20 C.F.R. § 1.00(B)(2)(c)). Examples of such inability include: the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level. 20 C.F.R. § 1.00(B)(2)(c). To use upper extremities effectively, Plaintiff must be capable of reaching, pushing, pulling, grasping, and fingering. *Id.*

The ALJ found that in July 2013, psoriasis and psoriatic arthritis affected about sixty-five percent (65%) of Guidry's body. R. Doc. 16-2, Tr. 17. He noted that Humira was previously successful, but he stopped taking it due to a sinus infection. *Id.* He also noted that Guidry developed tremors. R. Doc. 16-2, Tr. 18. Treatment notes from April 2014 indicate Guidry as having psoriasis patches on the trunk and arms with psoriatic lesions present with no significant abnormalities noted. *Id.* The ALJ noted Guidry's testimony that he is unable to stand or sit too long, experiences pain and swelling of the knees and right ankle and is limited to walking to less than half of one mile. R. Doc. 16-2, Tr. 17. He also noted Guidry's testimony that he grocery shops once per month,

requires assistance lifting a case of water and sometimes misses when he pours a glass of milk. *Id.* He further noted Guidry testimony that sometimes he shakes so bad that he cannot eat with a spoon. *Id.* Nonetheless, the ALJ noted his postural tremor resolved with Gabapentin in April of 2017. *Id.*

Plaintiff's medical record does not suggest Plaintiff's impairments result in an extreme loss of function, which interferes very seriously with Plaintiff's ability to initiate, sustain, or complete activities. Guidry reported to Dr. Donald Gervais that his left-hand twitches on more than one finger but as soon as he flexes his muscle, the tremors stop. R. Doc. 16-7, Tr. 261. On examination he had normal tone and fine motor function dexterous bilaterally. R. Doc. 16-7, Tr. 260. The doctor also noted that his reflexes were equal, and he could heel toe walk without difficulty. *Id.*

The record shows that on April 11, 2014, the medical records list a host of problems but also note that during the physical exam and Guidry was healthy, well-nourished, well develop and ambulating normally. R. Doc. 16-7, Tr. 325. On April 24, 2015, Guidry's medications were reviewed, and it was noted that his psoriatic arthritis was getting worse. R. Doc. 167, Tr. 321-22. The record noted on June 15, 2015, that he appeared healthy, well-nourished and well developed. R. Doc. 16-7, Tr. 320. On October 20, 2015, Guidry appeared complaining about migraine and sinus. R. Doc. 16-7, Tr. 312-13. Still, on this visit he appeared healthy, well-nourished, and well-developed. The doctor also noted that Guidry ambulated normally. *Id.* On February 19, 2016 that on physical examination, Guidry again appeared healthy well-nourished well developed and ambulating normally. R. Doc. 16-7, Tr. 310.

A review of the medical records indicates that there is no evidence that Guidry's upper extremities were not functional. There is evidence that Guidry was able to grocery shop and pour milk, even though he sometimes missed. R. Doc. 16-2, Tr. 17. There is no evidence that Guidry

could not take care of his personal hygiene or unable to handle papers. Therefore, while the ALJ failed to consider Listing 14.09, the error did not impact the outcome of the case nor prejudice Guidry. *See Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003)

### B. Plaintiff's Condition did not Equal Listing Level 8.05

Guidry next contends that the ALJ erred when he concluded that Guidry's condition did not equal listing 8.05, which Guidry contends is not supported by substantial evidence. R. Doc. 18, p. 10. Guidry contends that after determining that his psoriasis did not meet Listing 8.05, the ALJ improperly failed to conclude that his condition equaled Listing 8.05. *Id.* Guidry contends that the medical evidence illustrates that he had a long history of lesions and that the frequent flare-ups resulted in extensive skin lesions. R. Doc. 18, p. 11. Therefore, Guidry contends that even if the lesions were not persistent enough to meet Listing 8.05 the ALJ still should have found that he met the listing due to the flair-ups. R. Doc. 18, p. 12.

The Commissioner contends that the ALJ's finding that Guidry did not have skin lesions that persisted for at least three months despite the continuing treatment as prescribed is based upon substantial evidence. R. Doc. 23, p. 8. The Commissioner further contends that the presences of psoriasis alone does not automatically mean that the condition equaled the requirements of Listing 8.05. *Id.*

While it is uncontested that the psoriasis is a severe impairment, the question is whether Guidry's flare ups result in extensive lesions as defined by C1. The ALJ found that the record does not show the claimant meets Listing 8.05, Dermatitis, and there is no evidence that Guidry had a skin lesion that persisted for at least three months despite continuing treatment as prescribed. This finding is supported by the ALJ's review of Guidry's medical record, which indicated Plaintiff's

physician described Plaintiff's psoriasis as "stable" by April 2017. R. Doc. 23, p. 9. The ALJ's decision regarding Listing Level 8.05 is based upon substantial evidence.

### C. Additional Evidence Submitted to the Appeals Council.

Guidry next contends that the matter should be remanded because on February 22, 2018, Dr. Boh provided a letter to his counsel in which he opined that Guidry could not hold a job due to his condition and should, therefore, be deemed disabled. R. Doc. 18, p. 12. Guidry notes that this opinion was not rendered earlier because he did not bring the Listing 8.05 issue to Dr. Boh's attention until after the ALJ ruled that he did not meet the listing level. *Id.*

The Commissioner contends that the ALJ considered the new evidence and entered it as part of the record. R. Doc. 23, p. 9. The Commissioner notes that the Appeals Council found that this new evidence did not show with a reasonable probability that it would change the outcome of the ALJ's decision. *Id.*

Title 20 C.F.R. § 404.970(b) permits, if not invites, the claimant to submit new evidence to the Appeals Council. Excluding such evidence on review might undermine the purpose of this regulation, which provides a claimant a final chance to demonstrate disability before the Commissioner's decision is final. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). In the materiality requirement, the new evidence must relate to the time period for which benefits were denied, and that it not concerns evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *Haywood v. Sullivan,* 888 F.2d 1463, 1471 (5th Cir.1989). Moreover, remand is only warranted where the claimant has shown good cause why the evidence in question was not presented in a prior proceeding. Title 42 U.S. C. §405(g). If the claimant can show good cause, then he must also show that the evidence is material and that it

is new. *Id.*

As for good cause, there is none. Guidry admits that he did not seek to obtain the opinion of Dr. Boh until after the denial of his claim where the ALJ found that he did not meet the 8.05 Listing Level requirement. Second, the letter is dated three months after the ALJ's November 2017 decision and does not pertain to Guidry's functioning during the period addressed by the ALJ. According to the letter, it was at the time it was written that Guidry could not hold a job, and not during the time of the purported disability, the period the ALJ considered. R. Doc. 16-2, Tr. 6. Additionally, despite these flaws, the Appeals Council considered the letter and concluded that the ALJ's opinion was correct even in the face of this untimely evidence was based upon substantial evidence. The Court, therefore, finds that remand is not appropriate, the evidence is beyond the period considered for the alleged disability and the ALJ's opinion is based upon substantial evidence.

### D. <u>ALJ's RFC Finding</u>

Guidry contends that the Commissioner's failure to incorporate all his limitation in the residual functional capacity ("RFC") violate the requirements of Social Security Ruling 96-8p (July 2, 1996). R. Doc. 18, p. 14. Guidry contends that the residual assessment of failed to consider his limitations caused by psoriatic arthritis, which significantly impacts his ability to finger and handle. *Id.* Guidry contends that his tremors also negatively impact his ability to finger and handle. *Id.* The ALJ, according to Guidry, also failed to incorporate any restrictions caused by his documented migraines, which would significantly limit his persistence, concentration and pace, as well as absences and lack of timeliness. *Id.* Guidry also contends that the RFC is not supported by substantial evidence because it is based off hypotheticals to the vocational expert that did not

consider all his limitations. *Id.* Guidry contends that the ALJ's failure to include the entirety of his limitation in assessing his ability to perform work-related activities into the hypothetical not only constitutes error but also requires remand for the incorporation of the limitations. R. Doc. 18, p. 15.

The Commissioner contends that the medical evidence supports the ALJ finding. R. Doc. 23, p. 11. The Commissioner noted that during the visit of March 2016 consultative examination, Guidry's hands and arms were noted as functioning normally, and, in April 2017, an electromyogram/nerve conduction study was normal. *Id.* Finally, the Commissioner points out that Guidry was prescribed Gabapentin, which improved his condition, and when later increased, provided him better control his tremors. *Id.*

The ALJ held Guidry's hands and arms functioned normally. He found that Guidry could push, pulling reach, crouch, squat and stoop normally. R. Doc. 16-2, Tr. 18. The ALJ further noted that Guidry could also climb on and off the exam table independently. *Id.* The ALJ further found that Guidry's migraines were described as secondary in November 2016 but were responsive to Percocet. R. Doc. 16-2, Tr. 18.

The ALJ is responsible for determining the claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). As set forth in the regulations, RFC is an assessment of an individual's ability to do sustained, related physical and mental activities in a work setting on a regular and continuing basis. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Hector v. Barnhart*, 337 F.3d 905, 924 (S.D. Tex. 2004). Moreover, the assessment is considered to represent the most— not the least—that an individual can do despite her limitations or restrictions. *See id.* The ALJ

normally reaches the determination of a claimant's RFC through a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386–87 (5th Cir. 1988); *see also Ripley*, 67 F.3d at 557 (recognizing that if one does not exist, the ALJ can request a medical source statement which considers the exertional and/or non-exertional limitations the applicant has and then describes the types of work, if any, that the applicant is capable of performing given any such limitations).

As an initial note, while Guidry contends that the ALJ did not consider all the evidence regarding his hand and finger, he fails to point to that very evidence. The record does indicate that in March 2016 Guidry's hands and arms functioned normally. R. Doc. 16-7, Tr. 355. One year and a month later, in April of 2017, an electromyogram/ nerve conduction study conduction was normal. Tr. 18, 432. There is evidence that the medication prescribed, Gabapentin, was initially helpful but later had to be increased to provide additional control of tremors. R. Doc. 16-2, Tr. 18; R. Doc. 16-8, Tr. 426, 432.

In reviewing the record, there is no error by the ALJ. The medical records support his opinion that Guidry had normal use of his hands and fingers and Guidry does not point to any medicals that contradict this finding. Therefore, if the ALJ's finding regarding Guidry's hands and fingers supported by the record, it follows then that the hypothetical provided to the vocational expert was also accurate and portrayed all the limitations. The Court therefore finds that the ALJ's RFC finding is based on substantial evidence.

### IV.  Recommendation

**IT IS RECOMMENDED** that the decision of the Administrative Law Judge denying

Jason Joseph Guidry's Disability Insurance Benefits and Supplemental Social Security Income benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 20th day of February, 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.